UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROGER B. SCHAGRIN and ROGER B. SCHAGRIN, PC, doing business as SCHAGRIN ASSOCIATES, | No. 14 C 9125 |
| Plaintiffs, | Judge Thomas M. Durkin |
| v. | |
| LDR INDUSTRIES, LLC; GB HOLDINGS, INC.; LARRY GREENSPON and DENNIS GREENSPON, | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Defendants manufacture and import steel pipe from China. Relators, Roger Schagrin and his law firm, allege that Defendants misclassify the pipe in order to avoid paying certain customs duties. Relators claim that this works a fraud against the federal government in violation of the False Claims Act. Defendants have moved to dismiss for lack of subject matter jurisdiction and for failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), respectively. R. 44. For the following reasons, that motion is granted and the case is dismissed.

**Background**

In international trade, products are sometimes imported to the United States and sold for less than their normal value. This practice is referred to as "dumping," and can hurt domestic companies who sell the same product at normal value. Similarly, some imports are able to be sold at less than normal value because of

foreign government subsidies. The federal government can counter these practices with "anti-dumping" and "countervailing" customs duties, respectively.

According to Relators, around November 2007 the federal government imposed such duties on "circular welded pipe" (i.e., steel pipe of various specifications for use in plumbing, among other uses) imported from China. R. 1 ¶¶ 1, 27. These duties amount to at least 30% and sometimes as much as 620%. *Id.* ¶ 27. After these duties were imposed, steel pipe imports from China decreased from 748,181 tons in 2007 to only 2,813 tons in 2009, representing only 0.6% of consumption in the United States. *Id.* ¶ 30. The duty regulations exclude "pipe suitable for use in boilers [and] superheaters," among other exceptions. *Id.* ¶ 2.

Defendant LDR Industries LLC, headquartered in Chicago, has imported steel pipe from China "since at least 2010." *Id.* ¶ 3. It sells steel pipe and related products to retail stores around the country including Home Depot. *Id.* ¶ 13. LDR owns companies in Taiwan and China that manufacture the pipe and prepare it for export to the United States. *Id.* Defendant GB Holdings, Inc. is the sole member of LDR, and has its headquarters at the same Chicago address as LDR. *Id.* ¶ 14. GB Holdings is owned by defendants Larry and Dennis Greenspon, who are also LDR's managers. *Id.* ¶ 15.

Relator Schagrin is an attorney experienced in the steel pipe industry and related matters of international trade. *Id.* ¶¶ 10-11. In 2010, Schagrin visited a Home Depot store and noticed LDR pipe imported from China. *Id.* ¶ 31. Based on his experience with the steel pipe industry he surmised that this pipe did not fall

2

into any of the exceptions to the duty regulations, and was the same type of pipe LDR imported from China prior to implementation of the duty regulations. *Id.* ¶¶ 31-36. He also surmised that LDR had not paid the duties because the prices were too low. *Id.* ¶ 37. Schagrin alleges that these conclusions would have been obvious to anyone with sufficient knowledge of the industry and regulations. *Id.* ¶ 38.

Schagrin reported his suspicions to the United States Customs and Border Protection Agency ("U.S. Customs") in 2012. *Id.* ¶ 43. U.S. Customs investigated and determined that LDR had misclassified its imported pipe in order to avoid paying duties. *Id.* ¶ 44. Relators allege that U.S. Customs "billed" LDR for unpaid duties in the amount of $6.7 million, which was later reduced to $4.85 million, covering pipe shipments in 2011 and 2012. *Id.* Relators also allege that U.S. Customs "continues to investigate the matter." *Id.*

Largely due to the penalties imposed by U.S. Customs, LDR declared bankruptcy on September 2, 2014. U.S. Customs filed a proof of claim in that proceeding on February 3, 2015. Defendants have attached that proof of claim (and its amendments) to their motion to dismiss. According to those documents, U.S. Customs claims the following:

> The loss of revenue of $14,376,139.08 was a result of incorrect classification in which LDR Industries, LLC underpaid Customs duties on entries from November 2007 to September 2012.
>
> The penalty is being assessed for $38,813,848.70 due to the findings that the entries were filed with incorrect classification with no rate and/or lower rates of dumping countervailing duties. The penalty also includes entries that were filed as consumption should have been subject

3

> to anti-dumping and countervailing. These findings are the result of the penalty pursuant to 19 U.S.C. § 1592.

R. 45-4 at 8; R. 45-5 at 8; 45-6 at 10. Additionally, in the initial proof of claim (although not in subsequent amendments), U.S. Customs stated that LDR "paid dumping deposit rate of 3.39% for entries imported from Korea; however, it turned out that the merchandise came from China and the rate for dumping and countervailing should have been at 68.24% and 39.01%." R. 45-4 at 10.

Relators did not file a proof of claim in LDR's bankruptcy proceedings. Relators filed this action on November 13, 2014.

On October 6, 2016, the bankruptcy court entered an order approving LDR's Chapter 11 plan. *See* R. 45-2. That order notes that the plan "incorporates the terms of a settlement between [LDR] and [U.S. Customs] which resolves the Disputed Claim filed by [U.S. Customs] in the amount of $58,717,368.86[.]" *Id.* at 8. The plan itself provides that the settlement constitutes a "full and complete satisfaction of [LDR's] obligations for all Claims held by [U.S. Customs]." *Id.* at 21.

## Analysis

In a provision known as the "government action bar," the False Claims Act provides, "In no event may a person bring an action under [the False Claims Act] which is based upon allegations or transactions which are the subject of a civil suit or an administrative civil money penalty proceeding in which the Government is already a party." 31 U.S.C. § 3730(e)(3).[1] Defendants argue that this case must be

---

[1] The Seventh Circuit has held that "it is not clear that § 3730(e)(3) imposes a true jurisdictional limitation." *U.S. ex. rel. Absher v. Momence Meadows Nursing Ctr.,*

4

dismissed because U.S. Customs assessed penalties against LDR pursuant to 19 U.S.C. § 1592, and then pursued those penalties by filing a claim in LDR's bankruptcy proceeding.

Relators' primary argument against application of the government action bar to this case is that U.S. Customs did not pursue an "administrative civil money penalty proceeding" against LDR, as § 3730(e)(3) requires. Relators characterize U.S. Customs's pursuit of payment from LDR as "a bill for duties [that] is quite different from a penalty proceeding under 19 U.S.C. § 1592(b)." R. 50 at 14. The problem with this argument is that the proof of claim U.S. Customs filed in the bankruptcy court notes that the findings supporting the claim "are the result of the penalty pursuant to 19 U.S.C. § 1592." R. 45-5 at 8.[2] Contrary to Relators' allegation that U.S. Customs merely sent LDR "a bill" for unpaid duties, the proof of claim shows that U.S. Customs pursued a penalty amount far greater than the $6.7 million for which LDR was allegedly "billed." The few district courts to have addressed what constitutes an "administrative civil money penalty proceeding" for purposes of § 3730(e)(3) agree that whether the government has already imposed a "penalty" against the defendant is key to determining whether § 3730(e)(3) bars a subsequent FCA claim. *See Found. For Fair Contracting, Ltd. v. G&M E.*

---

*Inc.*, 764 F.3d 699, 706 (7th Cir. 2014). It is unnecessary to decide whether § 3730(e)(3) implicates the Court's subject matter jurisdiction because the outcome of this motion is the same regardless.

[2] It is proper for the Court to take judicial notice of these court filings on a motion to dismiss. *See Olson v. Champaign County*, 784 F.3d 1093, 1097 (7th Cir. 2015) ("As a general rule, we may take judicial notice of public records not attached to the complaint in ruling on a motion to dismiss under Rule 12(b)(6).").

*Contracting & Double E, LLC*, 259 F. Supp. 2d 329, 337-38 (D.N.J. 2003) (dismissing FCA claim because the Department of Labor had already imposed penalty for inaccurate reporting of employee number and wage misclassifications); *U.S. ex rel. Int'l Broth. of Elec. Workers, Local Union No. 98 v. Farfield Co.*, 2013 WL 3327505, at *12 (E.D. Penn. July 2, 2013) (denying motion to dimiss FCA claim because Department of Labor audit did not seek a penalty); *U.S. ex rel. Jonson v. Shell Oil Co.*, 26 F. Supp. 2d 923, 928 (E.D. Tex. 1998) (denying motion to dismiss FCA claim because the federal Mineral Management Service audit did not seek a penalty); *U.S. ex rel. McDermott v. Genetech, Inc.*, 2006 WL 3741920, at *7 (D. Maine Dec. 14, 2006) (denying motion to dismiss FCA claim based on a Justice Department investigatory subpoena, because "there is nothing but . . . speculation to suggest that the government will obtain redress through its investigation"). Accordingly, this Court finds that U.S. Customs's pursuit of penalties against LDR pursuant to 19 U.S.C. § 1592(b) was an "administrative civil money penalty proceeding" for purposes of § 3730(e)(3).

Relators also argue in passing that their claims are "not 'based upon' any 'allegations or transactions' that the Government alleged in a pleading or other document." R. 50 at 16. But as Defendants point out, Relators concede that their allegations about LDR's failure to pay antidumping and countervailing duties are the same allegations "Customs concluded . . . were true," R. 50 at 17, and that Relators are seeking to collect the remainder of penalties identified in U.S.

Customs's proof of claim.[3] The Seventh Circuit has explained that a claim is barred under the False Claims Act "when either the allegation of fraud or the critical elements of the fraudulent transaction themselves are the subject of a governmental civil action or penalty proceeding." *Absher*, 764 F.3d at 707. Such "critical elements" include the misrepresentation underlying the alleged fraud. *Id.* at 709 n.10. Here, the misrepresentation at issue is the failure to accurately classify the imported pipe in order to evade customs duties. As Relators' allegations show, this misrepresentation is at the heart of both the U.S. Customs penalty proceeding and Relators' claims. Relators' pursuit of claims based on LDR's failure to pay antidumping and countervailing duties is based on the same "allegations and transactions" as the U.S. Customs penalty proceeding against LDR.

Relators' claims are unlike those at issue in *Absher* where the Seventh Circuit held that the False Claims Act allegations were not based on the same allegations and transactions as the prior penalty proceedings. In that case, a nursing home was alleged to have provided substandard care and to have made false claims when it certified that the care met the standard in seeking payment. *Id.* at 708-09 & n.10. The Seventh Circuit held that the government's knowledge of substandard care (uncovered during an administrative investigation) did not

---

[3] *See* R. 50 at 5-6 ("Customs sent LDR a bill for approximately $4.85 million . . . . But that was only a small portion of the Government's damages. In LDR's subsequent bankruptcy proceedings—which was the Greenspons' attempt to avoid paying that bill—Customs filed a claim form indicating that it has suffered a 'loss of revenue' of $14,376,149.08 . . . . The Government is still owed more than $14 million, and this lawsuit is the only hope for recovering any of that for the Nation['s] taxpayers.").

7

necessarily demonstrate that the government had knowledge that the nursing home acted with the scienter necessary to state a claim under the False Claims Act. In this case, however, it is not possible to similarly separate the underlying activity from the misrepresentation about the activity. Rather, LDR's misrepresentations about the pipe characteristics is the relevant activity itself. Thus, both the U.S. Customs penalty proceeding and Relators' claims are based on misrepresentations inherent to misclassifying imported products.

Relators also cite *U.S. ex rel. S. Prawer and Co. v. Fleet Bank of Maine,* a frequently cited First Circuit decision explaining that the government action bar is one of several attempts by Congress to add jurisdictional or statutory bars to the False Claims Act with the intent to prohibit "parasitic" actions—i.e., actions which "receiv[e] support, advantage or the like from the host case (in which the government is a party) without giving any useful or proper return to the government." 24 F.3d 320, 327-28 (1st Cir. 1994). Relators argue that this case is "not a situation where Relators are merely attempting to piggyback on the Government's prior pursuit and receipt of an adequate remedy . . . . [and] there is no host/parasitic relationship here that the government action bar was enacted to discourage. Indeed Customs only became aware of the unpaid duties because Relators blew the whistle and [were] instrumental in Custom's investigation." R. 50 at 15.

To the extent that the "parasite" metaphor accurately characterizes the general intent of the statutory bars included in the False Claims Act, it does not

8

help determine whether § 3730(e)(3) bars this case in particular. In *Prawer*, the FDIC took over insolvent Maine National Bank and later sold Maine National's assets to Fleet Bank, on the condition that Fleet Bank had the right to sell certain Maine National loans back to the FDIC under certain conditions. Fleet eventually sold certain Prawar loans back to the FDIC. The FDIC instituted an action to collect on the Prawar loans which eventually settled. Prawar then brought FCA claims against Fleet and others alleging fraud in exercising the right to sell the Prawar loans to the FDIC. The First Circuit held that Prawar's FCA action was not "parasitic" on the FDIC collection action because Fleet and the other defendants in the FCA action were not the defendants in the collection action, and the two proceedings concerned "entirely different transaction[s] or occurrence[s]."

This reasoning is not helpful to answering the questions at issue in this case. It is irrelevant to determining whether the U.S. Customs proceedings against LDR constitutes an "administrative civil money penalty proceeding" under § 3730(e)(3). It also does not shed light on whether this case is "based upon [the] allegations or transactions which [were] the subject" of the U.S. Customs proceeding against LDR. Unlike *Prawar*, LDR is on the defensive in both proceedings at issue here. Further, unlike *Prawar*, the same transaction or occurrence—i.e., LDR's failure to pay certain customs duties on steel pipe—is at the heart of both proceedings. Relators contend that their being the original source of this information leading to U.S. Customs instituting the penalty proceeding against LDR shows that this FCA case is not parasitic. This may be an argument that Relators are an "original source"

9

such that the FCA's "public disclosure bar" does not apply. *See* 31 U.S.C. § 3730(e)(4). But it is not enough to be an original source in order to have the right to file an FCA claim. The government action bar provision also requires that the government has chosen not to pursue that claim in some other forum. Defendants have shown that the government made such a decision in this case such that it is barred by § 3730(e)(3).

In addition to claiming that Defendants evaded customs duties by improperly classifying the imported pipe (Count One), Relators claim that Defendants evaded customs duties by using improper labels to identify the pipe's country of origin (Count Two). Specifically, Relators allege that "LDR's pipes and pipe fittings are marked with small paper labels identifying them as foreign made. They do not have the proper stenciling, engraving, or otherwise permanent markings required." R. 1 ¶ 7. So called "marking duties" are assessed if the import does not properly identify the country of origin. The parties do not address whether Relators' claim regarding marking duties can be said to be "based upon allegations or transactions" which were "the subject of" the penalty proceedings U.S. Customs brought against LDR. U.S. Customs's proof of claim in the bankruptcy proceedings does not appear to specifically reference a marking duty violation. But the initial proof of claim document notes that part of the U.S. Customs investigation addressed the allegation that LDR paid the duty for imports "from Korea; however it turned out that the merchandise came from China." R. 45-4 at 10. Clearly, U.S. Customs was concerned with how LDR had misidentified the country of origin for its products,

which is the underlying misrepresentation when failing to pay marking duties. Thus, the Court finds that both of Relators' claims were addressed by the U.S. Custom penalty proceeding against LDR, and are barred by § 3730(e)(3).[4]

## Conclusion

For the foregoing reasons, Defendants' motion to dismiss, R. 44, is granted. The case is dismissed with prejudice because § 3730(e)(3) is a legal bar and repleading would be futile.

ENTERED:

*Thomas M Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: May 23, 2018

---

[4] In light of this decision, it is unnecessary for the Court to address Defendants' arguments regarding the preclusive effect of the bankruptcy proceedings, res judicata, and the substantive elements of the False Claims Act.