UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES ex rel. ROGER B. SCHAGRIN and ROGER B. SCHAGRIN, PC, doing business as SCHAGRIN ASSOCIATES,<br><br>Plaintiffs,<br><br>v.<br><br>LDR INDUSTRIES, LLC; GB HOLDINGS, INC.; LARRY GREENSPON; and DENNIS GREENSPON,<br><br>Defendants. | No. 14 C 9125<br><br>Judge Thomas M. Durkin |

MEMORANDUM OPINION AND ORDER

Defendants manufactured and imported steel pipe from China. Relators, Roger Schagrin and his law firm, allege that Defendants misclassified the pipe to avoid paying certain customs duties. Relators claim that this worked a fraud against the federal government in violation of the False Claims Act.

On November 20, 2018, the Court granted Defendants' motion to dismiss. The Court "agree[d] with Relators' theory of the case to the extent that if the Greenspons knew that LDR—the company they owned and managed—was not paying customs duties, they can be liable under the False Claims Act for failing to rectify the situation." R. 78 at 14 (*United States ex rel. Schagrin v. LDR Indus., LLC*, 2018 WL 6064699, at *6 (N.D. Ill. Nov. 20, 2018)). But the Court held that Relators had failed to allege facts "that the Greenspons were sufficiently experienced in the industry" such that the Court might infer that the Greenspons knew about or at least could

"apprehend the 'obviousness' of the customs violations." R. 78 at 16. The Court dismissed the complaint without prejudice to permit Relators the chance to replead.

Relators filed a second amended complaint in an attempt to cure the deficiencies the Court identified in the prior complaint. R. 86. Defendants have again moved to dismiss for failure to state a claim. R. 90. That motion is denied in part and granted in part.

**I.   Plausibility**

As the Court held in its prior opinion, what is needed for Plaintiffs' claims to survive a motion to dismiss are plausible allegations that the Greenspons knew about the alleged fraud. Plaintiffs have supplied several additional allegations that plausibly establish that the Greenspons had intimate knowledge of LDR's business and the relevant industry, and by extension establish their knowledge of the fraud in this case:

- a former LDR employee describes the Greenspons as having "controlled every aspect of LDR's business," R. 86 ¶ 52;

- when LDR was sold as a part of bankruptcy proceedings, the Greenspons entered into non-competition and consulting agreements with the buyer and agreed "to provide for assistance [to the buyer] in connection with the continued operation of the business, transition assistance with suppliers and customers, and minimizing any disruption in the operation of the business," R. 86-1 at 23 (¶ 17);

- Larry Greenspon submitted an affidavit in a proceeding before the U.S. International Trade Commission, in which he rendered an opinion based on his experience at LDR about whether "pipe fittings" imported from China "compete with U.S.-made . . . pipe fittings," R. 86-1 at 15-16;
- in that same affidavit, Larry Greenspon described LDR as a "family owned business," R. 86-1 at 15; and
- as of September 2014, LDR employed 90 people and had annual net sales of $65 million, *see* R. 86-1 at 124-25 (pp. 3-4 ¶¶ 10, 14), as compared with another Chicago-based competitor that employs approximately 2,300 people and has net sales of $2.6 billion, *see* R. 86 ¶ 50.

These allegations demonstrate that the Greenspons were actively managing LDR and were experienced in the business of importing pipe from China. Considering this level of involvement, industry experience, and that LDR is a relatively small company, it is plausible that the Greenspons knew about LDR's customs violations.

Defendants focus on Plaintiffs' failure to make specific allegations regarding the Greenspons' conduct with respect to payment of customs duties, particularly during the time period relevant to this case. But specificity is not the standard. Rather, the allegations in the complaint must permit the Court plausibly to infer Defendants' liability. The new allegations discussed above plausibly demonstrate that the Greenspons were intimately involved in LDR's business, including its business importing pipe from China. That involvement, combined with their complete

control of the company, is sufficient to plead knowledge and causation, hence liability. *See* R. 78 at 12-14 (citing cases).

Defendants note that Plaintiffs' allegations do not exclude the plausibility of an alternative scenario in which the Greenspons did not have knowledge of the fraud. But while alternative scenarios may be so likely as to make a plaintiff's account of the facts implausible, the mere existence of a plausible scenario in which a defendant is not liable does not undermine the plausibility of every other alternative in which the defendant is liable. And courts may not weigh plausible alternatives under Rule a 12(b)(6). If a plaintiff makes a plausible claim, the plaintiff has satisfied Rule 12(b)(6), regardless of the existence of other plausible scenarios.

## II.  Alter Ego

Plaintiffs also claim that the Greenspons are liable for LDR's fraud through alter ego liability. Alter ego liability requires plausible allegations both that LDR was the Greenspons' "instrumentality" and that using LDR as an instrumentality caused a "fraud or injustice." In the November 20 opinion, the Court noted that Relators had plausibly alleged "that LDR was the Greenspons' instrumentality," but failed to allege "fraud or injustice." R. 78 at 20-21.

In the second amended complaint, Relators have plausibly alleged that the Greenspons knew about LDR's customs violations. This knowledge, combined with Relators' earlier allegation that "the Greenspons siphon[ed] off LDR's ill-gotten profits from avoiding customs duties payments," demonstrates fraud or injustice. *See*

4

R. 78 at 21. Thus, Relators' alternative theory of liability based on alter ego allegations remains in the case.

### III. Conspiracy

Relators also claim the Greenspons have liability under a conspiracy theory. The Court rejected this theory in its November 20 opinion citing the "intracorporate conspiracy doctrine," *see* R. 78 at 18 n.1, which generally "bars conspiracy claims wherein the alleged conspirators are either a parent corporation and its wholly-owned subsidiaries, a corporation and its employees, or the co-employees of a corporation." *United States ex rel. Chilcott v. KBR, Inc.*, 2013 WL 5781660, at *10 (C.D. Ill. Oct. 25, 2013) (citing cases). As Relators have plausibly alleged direct liability and alter ego liability, it is unnecessary for the Court to address the scope of the intracorporate conspiracy doctrine as it relates to this case. Should discovery bring direct or alter ego liability into question, the Court will address the potential for conspiracy liability—and the effect of the intracorporate conspiracy doctrine—at summary judgment or as necessary for trial. Allowing the conspiracy claim to remain will not materially change the scope of discovery in this case, if at all. For now, the conspiracy claim remains.

### IV. Claims Against LDR

The Court dismissed Relators' claims against LDR because "Relators concede that the government has released its claims against LDR in [LDR's] bankruptcy proceeding." R. 78 at 21 (citing R. 50 at 10). Relators argued that "LDR should remain in the case as a defendant because they 'are not seeking to recover damages from

5

LDR,' but 'seek only a determination of LDR's liability.'" R. 78 at 22 (citing R. 50 at 10). Relators make the same argument on this motion but cite no authority in support. *See* R. 93 at 20.

As discussed in the November 20 opinion, "liability under the False Claims Act is determined on a person by person basis." R. 78 at 22. The Court does not see how a judgment against LDR is necessary to establish the liability of the Greenspons (and/or GB Holdings, the Greenspons' wholly owned LLC) in this case. The potential for a finding by the Court that LDR failed to pay customs duties might be a basis to find that LDR is a necessary party under Federal Rule of Civil Procedure 19. But that would be a reason for LDR or the government (which could theoretically have additional claims against LDR) to insist that LDR be party to this case. LDR actively seeks dismissal, and the government hasn't expressed a position on this issue.

Since Relators haven't identified a reason for LDR to be a party to this case, the Court will dismiss LDR without prejudice should LDR's presence in the case be necessary for Relators to establish liability or to be awarded relief. If the Greenspons believe that LDR's presence as a party is necessary for the claims to proceed against them, they should raise that argument promptly or the Court will consider it waived.

### V. Standing

Lastly, Defendants argue that Relators lack standing because: the government settled its claims against LDR for failure to pay customs duties; Defendants are only alleged to have injured the government through LDR's failure to pay customs duties; and standing under the False Claims Act is derivative of injury to the government.

Defendants argue that the money LDR paid to the government constituted "full and complete satisfaction" of LDR's "obligations for all Claims held by Customs." R. 95 at 14. This agreement, however, satisfies only LDR's liability by both (1) its express terms, and (2) the fact that the Greenspons and GB Holdings were not parties to the agreement.

Relators concede that the settlement amount will offset any recovery they achieve in this case. *See* R. 93 at 24 (they seek only damages "sustained by the United States for which it has not already been compensated"). But they have sufficiently alleged that there is additional recovery available beyond LDR's settlement payment. Thus, Relators have standing to proceed.

## Conclusion

Defendants' motion to dismiss, R. 90, is denied in part in accordance with this opinion. The motion is granted to the extent that the claims against LDR are dismissed without prejudice. The parties should confer regarding discovery and, if possible, be prepared to propose a schedule to the Court at the hearing on March 20, 2019.

ENTERED:

*Thomas M Durkin*
_____
Honorable Thomas M. Durkin
United States District Judge

Dated: March 19, 2019